Mr. Perlman, I have the honor of representing the Otos parties in this litigation and Moon Young-Huk, who are the appellants on this application. Mr. Perlman, you raise in your blue brief seven main issues, some with subparts. I've actually counted nine main issues. I've got 11. Why don't you choose your best three? Very well, Your Honor. If I may, in order to respond to issues in the cross-appeal, might I reserve three minutes for rebuttal? You might. You don't have to do three, but you can do even less. Well, what I'll do for you, Judge Garth, is I think I can narrow it basically to two issues, two overriding issues, if I might deal with it that way. And what I'd like to tell the court is that of the numerous errors which we allege in this case, and it may be 11 or it may be 12, they all basically arise out of and stem from a problem that set the case from that day forward. And that is the fact that issues which were placed before the court by the defendant in its counterclaim and third-party complaint were never really and should never really have been issues in the case, because with respect to the covenant of good faith and fair dealing, on the fact of this case there was no legal basis to assert that claim, and with respect to the issue of settlement based upon the fact in this case that is the one document on which the settlement, that unilateral letter or email in which the settlement was based, there was no basis to support that as a settlement. But you won on the settlement issue, right? We won on the settlement issue. So why are you claiming that somehow when you won that that's an error of the court to, I'm missing something. Well, I'm trying to do this as an overriding issue, Judge Ambrose, but the basis is this. The settlement issue eventually went out of the case, but it did not go out of the case until the end of trial. And at the end of trial, the jury had heard six days on the settlement issue. They had seen a chart on the settlement issue which supposedly set forth the settlement damages, a chart which defense counsel used in his summation, although he had agreed not to in the court. But if the judge agreed with you, what did you want the judge to do? Say, okay, you know what, I want that to go to a jury? Or you would prefer that he ruled as a directive verdict in your favor on that there was no settlement agreement? I suggest, Judge Ambrose, that the problem here, complicated by what happened at trial, was that it should have gone out on summary judgment, and in effecting this case so. But at this point, when you don't make a Rule 50A motion, summary judgment, you know, a judge never gets reversed for denying summary judgment. You can only pretty much get reversed for granting summary judgment. I hope you're wrong in this case, Judge. The point is, you can't go back once you go to trial, especially when you don't make a Rule 50A motion. Well, there was a 50A motion on the issue of settlement, and the case was, as you're right, you want it dismissed on it. And you want. Yeah. But the difficulty here was, and again... I mean, the case comes down to, when you strip it all away, if you want to strip the 11 issues down, the jury found against you on good faith and fair dealing, and then they assess damages that you claim were excessive. That's correct. And I believe that the assessment of damages that we say were excessive were a direct and proximate result of what happened with respect to the settlement. That's right. Your argument is, is that the evidence of the settlement here, the settlement offer, was intertwined with the evidence of OGK's damages on his claims of breach and his claims of implied covenant. Both were based on Otas' actual and future profits, right? What they referred to as profits, though, would be unfair, I think, to characterize them as that, but yes. It was essential that that evidence be considered as to the claim of breach, even though it was very similar to that or the same evidence that was submitted with reference to the settlement offer. With respect to the issue of breach, there had to be, obviously, testimony as to damages, and testimony as to damages would have been appropriate and was appropriate, but in this particular case, what was used by the jury to assess damages was the settlement chart and the settlement figures that were given as part of the settlement claim. It was close enough, if you figure 2.5% commission or 3% commission, it was close enough to those figures as well. Well, yeah, it was, but it could not have been, that could not have been an appropriate It wasn't unreasonable for the jury to come to that figure, was it? Well, you're not going to say no. Well, yes, it was unreasonable for the jury to come to that figure. Remember, this case, as we view it, should simply have been a breach of contract case, and under the contract as pled, and under the testimony of the parties with respect to the contract, it was either terminable at will, under which circumstances there could be no violation of the covenant as we see it, and certainly there were no damages for breach of contract if it was terminable at will, or a 15-year contract, and if it was a 15-year contract, the damages figure made absolutely no sense because it had no relationship to anything that was 15 years. The only logical conclusion that one can draw is that the jury was making a finding based upon the settlement information that it got, the settlement information on which counsel summed up even though it was not in the jury, even though it had been dismissed, the settlement information which was the basis of the chart, and the reading from the settlement memorandum, the settlement email which the court permitted defense counsel to read from, refused to permit plaintiff's counsel to read from, Odo's counsel to read from, telling him, well, just because he put one over on me, I'm not going to let you do it. I give him, I think the judge's words were, I give him credit for slipping it past me. I'm not going to let you sum up on that, and using a chart which the judge had ruled and defense counsel stipulated should not be presented to the jury. All of that combined simply carried the settlement issues through to the jury and infected the jury verdict. That and the fact that the judge never even charged the jury that the settlement was out of the case during the main charge. The judge didn't even tell the jury settlement was out of the case until after the main charge and summations, and then brought them back and said, I have to clear up a few things and by the way, here's one of them. All this testimony that you heard, I know you can't forget it, but don't consider it. It was utterly inadequate. It seemed like a very good charge to me. What else was he supposed to say? I think the problem was that it shouldn't have been in the case in the first place, and then it certainly shouldn't have been, and it certainly should have been dealt with as part of the main charge itself in terms of the settlement issue. The concept of a cure, of a curative charge, is that it has the capacity to cure, and in this case, based upon what happened here, based upon the verdict that we ultimately got, it's clear that the charge did not have the curative effect it should have had. That's my view on the settlement issue. Yet again, we have, I describe this as a plain error waiver case, that there was no objection made to the charge, and there was no objection to the curative instruction. I mean, it was a plain error case. You're right, Judge Barry, with respect to that issue, it's a plain error. But if it was so important, you would have thought, somebody would have thought about it at the time. I can't comment about what happened and what people thought, because as you know, we weren't trial counsel in the case. But what I can say is that even on a plain error standard, based upon what happened here, based upon what happened before the jury, and there were objections by counsel to what was in the chart, and to the testimony with respect to the settlement memorandum, I shouldn't say the testimony, I'm sorry, with respect to the summation on the settlement memorandum itself, those were objected to, and those were not plain error. But I agree that the charge itself was not the subject of an objection, and the charge itself has to be dealt with on a plain error standard in that regard. That doesn't mean, however, that all of these problems are dealt with on a plain error standard. I believe they're not. With respect to the covenant, the covenant of good faith and fair dealing, which was the basis for the verdict, and which didn't go out on summary judgment, there simply was no basis ever in the facts that were presented from day one. Well, on that issue, which in effect is, I guess, sufficiency of the evidence, then you can't make that claim now if you didn't file a Rule 50A motion. Yes, we can. I believe we can. For two reasons. How do you get around Greenleaf? I deal with, well, Greenleaf doesn't say you can never make it, it says in certain circumstances you can't, but I have the Williams versus Runyon case, which says that there is waiver, and where there is no objection to raising the issue that you didn't raise on 50B on a motion for a new trial, then it is, then it, you tell me how we would write a decision that says that Greenleaf and Yohannan are, we can distinguish them away when you're talking about sufficiency of the evidence, which is what you're talking about. I am talking about sufficiency of the evidence, and I am talking about the court's statement in Williams versus Runyon, where this circuit said, however, and I'm skipping over, I'm doing a little ellipsis here, but I don't think I'm changing the thought here, or the concept here. However, Williams did not raise for waiver objection to defendant's Rule 50B motion before the district court. Six of our sister circuits have held that where a party did not object to a MoVance 50B motion specifically on the grounds that the issue was waived by an inadequate 50A motion, the party's right to object on that basis is waived. We find this position persuasive. The need to preserve the issue through proper objection in the context of Rule 50A is to ensure that both parties are aware of and can raise dispositive issues earlier in the proceeding rather than later, so the district court can resolve the issue correctly and without delay. This is just as true when a plaintiff opposes a 50B motion as when defendant moves for directed verdict under 50A. And I believe— What year is the Williams opinion? I'm sorry? What year is the Williams opinion? Williams is the decision of this circuit in 1997, which is, I believe, post-Yohannan. When did Greenleaf come out? I thought Greenleaf came out—let's see, I'll tell you. It came out in 1999, after that. And Yohannan came out—well, Yohannan was 91, so Greenleaf's the last word. Well, Greenleaf— Well, we can get you on rebuttal on that. Okay, I will deal with it. I will deal with it on rebuttal because I hopefully will be able to find my copy of Greenleaf by then. Can you address the dam— But I think even Greenleaf said that it's not absolute. As a matter of plain error, as a matter of fundamental fairness, we can still—the court can still deal with it. And clearly, in this case, this is not an issue which was raised for the first time ever on appeal. It's not an issue which was raised for the first time ever, even on the motion for the new trial on sufficiency of evidence. And I believe Greenleaf draws distinctions between a 50B motion, the inability to pursue a 50B motion, and the inability to pursue a 59 motion. And I do not believe that Greenleaf forecloses the ability to pursue an insufficiency—not an insufficiency of evidence, but against the weight of the evidence motion under 59. But when you talk about sufficiency of the evidence, Yohannan circumscribes a court's authority to act upon such a motion when a party is arguing that the evidence is insufficient to support a verdict against it. I mean, that's game, set, and match. I— Well, we're not just dealing with—we're not dealing necessarily, Judge Ambrose, with insufficiency of the evidence. We're also dealing with against the weight of the evidence in the new trial. And I do not believe that Greenleaf circumscribes that motion because the standard is different. How are you doing that? Aren't you really saying against the weight of the evidence because that's what Greenleaf allows when, in fact, you were arguing sufficiency of the evidence? Well, we've argued both sufficiency of the evidence on the motion for the new trial. It was not only sufficiency of the evidence, but the standard was against the weight of the evidence. And that has been argued as well. That's the standard under 59, as I understand it. I thought what you're saying is there is insufficient evidence for this jury to have found that there was a violation of good faith and fair dealing. I am saying that, but I'm also saying that a violation—that a finding of a violation of good faith and fair dealing also is against the weight of the evidence. They are different standards, and I'm not precluded from saying that. And I do not believe that Greenleaf dealt with the waiver issue, whereas this circuit did deal with the waiver issue specifically in Williams, and I believe disposed of the waiver issue. And I do not believe—I'm sure the court will correct me if I'm wrong, and I'm sure counsel will correct me if I'm wrong—I do not believe that Greenleaf dealt with waiver at all. I believe the law in this circuit on waiver is Williams, and I believe it is clear that when there is no objection made at the time of a 50B or a 59 motion, based upon the failure to make a 50A motion, that it is waived because it is not jurisdictional. Tell me, how do you make such an objection? I was just thinking, as a district court judge, I would wait to hear about post-trial motions. Now, counsel doesn't make a particular motion. Is adverse counsel supposed to stand up and say, hey, judge, he didn't make a motion. He should have, and he didn't. Is that the way he objects to it? No. I believe that what happens is the time of the 50B motion, where there was no 50A motion made, that's the time that counsel stands up and objects that there was no 50A motion made. Or at the time of the 59 motion, one might get up and make that objection. You certainly wouldn't make it at the time of the 50A unless you're doing his job for him, obviously. We'll get you back on rebuttal. Thank you, Judge. And when you come back on rebuttal, just to give you a heads up, if you would address the damages as to where the damages were excessive by analyzing the Bacalum and Sons of Thunder  I will, Your Honor. Mr. Haffner. Thank you, Your Honor. Mark Haffner on behalf of OGK and Mr. Kim. To first examine the summary judgment question, it is not possible at this point to appeal from the denial of the summary judgment. Of course. If you want to go on and tell us what, we were told what the law was by Mr. Carlson with respect to 50A and 50B motions. He was inquired, he was asked to analyze that by Judge Ambrose. And I would like to hear your take on it. Certainly, Your Honor. The Williams case, Williams v. Runyon, does in fact say that if there, that the third circuit is joining its sister circuits and if there is no argument of waiver by the non-mover, then the non-mover has waived waiver as an argument on appeal. It says that at the beginning, but then when it gives with one hand, it takes away with the other because at page 573 of that case, this circuit says, and this is the actual holding that resolves the pending question, we are satisfied the balance of the equities in this case supports the conclusion that the postmaster's failure to offer any evidence at trial concerning failure to exhaust, which was the specific legal issue, combined with the postmaster's failure to raise the exhaustion issue in the motion for a directed verdict, waived the postmaster's right to renew the exhaustion motion in a subsequent motion for judgment NOV. So if this waiver of waiver doctrine is in fact the law, as Mr. Perlman argues it is, then once you've waived the waiver argument, then the fact there was no 50A motion would be worth zero and everything would be in front of this court as if it were new. But yet in Williams, we see it's a combination of the postmaster, the non-movement's failure or excuse me, the movement's failure to make a 50A motion combined with certain evidence they had or had not put in. So the Third Circuit in that case gave weight to the fact that there had been no 50A motion. So this circuit has never really fully addressed the issue of whether this waiver of waiver doctrine applies. My argument to your honors is that it in fact cannot apply in this circuit because to do so, to read the first half of Williams without the second half, then is irreconcilable with our law. And it is irreconcilable with Malik versus IBEW where the court recognized that these issues are not mere technicalities but rather their underpinnings rest in the Seventh Amendment to the U.S. Constitution. And thus can't be lightly disregarded. What Otis would like your honors to do is say, oh, well, because we got away with making a 50B motion or a 59 motion without ever having made an appropriate 50A motion, because we skirted by the district judge with no one realizing that we were in violation of the rules, we now get to continue to violate the rules in front of your honors. And the fact that there was a jury who sat for six days and heard this case and came to its factual conclusions is an irrelevancy. And we just get to ignore the Seventh Amendment. That shouldn't be the law. The cases that are cited from the other circuits that are in the brief, the Ninth Circuit case, Graves versus Coeur d'Alene and Thomas versus Texas Department of Criminal Justice from the Fifth Circuit, those cases are either not on point or provide no explanation for why those circuits think that this waiver of waiver idea is an acceptable solution. How many years did your client do commission work for the plaintiff? There began their work for the plaintiff in 1996. I think the formal commission work for this particular product, which was at issue, began in 1998. And then the relationship finally concluded in 2003. It is fair to say that without your client, Otis in the United States would have been nothing. Correct, Your Honor. My client developed the market for the product in the United States, dealt with the possible purchasers, sold the product, worked not only as a translator because of the fact that Otis is a Korean corporation, but also traveled to Wisconsin to meet with the main customer and then would stay up late at night to take calls from South Korea in order to plan new So there's about nine years that your client was working. Nine years if you take it from 1996. A couple less if you take it from 1998. Yes, Your Honor. Well, and also in 2002, I think, if I recall the record, 90% of Otis' worldwide sales were United States sales. Yes, a vast majority of the... Huge, huge majority. This was a very valuable business, the sales in the United States. And you got three years of profits, however you want to call it. Commission. Commission. How would the jury came to its conclusion to award $910,000, which is notably not the amount listed on any chart? This is a case under New Jersey law. Yes, Your Honor. If you would, because I've already given the heads up to Mr. Perlman, how do you analyze this case under Bacalum, which was damages of 20 months for future profits, for Sons of Thunder, which was pretty egregious, and I think there it was only 12 months for future profits. How do you get 36 months? The, you know, Bacalum and Sons of Thunder present decisions made by juries or in Bacalum in 1976, the Supreme Court exercising its original jurisdiction under New Jersey law, the New Jersey Supreme Court. You know, the New Jersey Supreme Court simply said that using its original jurisdiction it felt this was a number that was fair. If 20 and 12 were particularly... Again, Sons of Thunder was bad facts for the defendant in that case. What makes, if bad facts get you 12 months, I think it's 12, then how in the world do you get 36 months and say that's okay? Well, you know, in Sons of Thunder, Your Honor, the jury, in that case the jury gave the award. It's hard to know what issues of credibility, what issues of damages the jury was considering when it came to that award number. With Bacalum it's a little easier given that it was the Supreme Court's original jurisdiction. Either way, here, you know, there's clearly a basis for 36 months. And even to the extent that, you know, that strikes us as high or low. What was the basis for the 36 months? Well, I was going to say, Your Honor, you know, not unlike Bacalum, Mr. Kim relied upon the promises he was given by Mr. Ha. Mr. Kim, you know, had ongoing dealings. He gave up other options. Well, if the promises were what? That he was going to be able to be in business with him until he was 60 years old, which was a 15-year contract? Well, you know, let's not be too certain as to what the promises were in that sense, whether there was some term of years, because that gets us to this question of whether it was actually a breach of contract. Well, whatever the promise was, I mean, he purchased a house and he took it in advance against future commissions. And he sacrificed other business opportunities. The commissions under the contract were 80% of his income. I think this is a bad set of facts akin to the New Jersey cases that we've talked about. I think the set of facts is no different than Bacalum. That was a softball. It was a softball. Yes is the answer. I apologize, Your Honor. You should see me hit. These are not so innocuous, these facts here. Speaking only for myself, I'm not so certain that the jury was unreasonable in coming to this amount. There was a reasonable basis for this calculation, assuming we go to the commissions and the amount of future profits. And you do have this man was responsible for building up the whole United States business. And he forewent other opportunities based on that. It's not an unreasonable amount, especially when one considers that the jury had an opportunity to view the credibility of all the witnesses, view all of the evidence presented. And it's not the standard presented to your honors is not to, you know, come to the conclusion whether you would have given the same amount or nearly the same amount, but rather whether it shocks the judicial conscience. So the question of 20 months versus 36. Don't you like the argument that Judge Barry made on your behalf? I certainly do, but I didn't feel the need to repeat it. So, you know, it certainly doesn't shock the judicial conscience that the jury came to the conclusion that 36 months, more or less, and it's a little less, and it's not even, you know, certain it was 36 months. Because they were trying to squeeze him out for years by lowering the commission rate even though his sales were going up. But, of course, he agreed to that. Well, he agreed to that, your honor, because his other choice was to be cut out of the equation earlier rather than later, which is the vibe the jury got, undoubtedly. The fact that Otis's problem in this case is that its key witness was not persuasive and the jury did not believe him when he gave his explanations of why he did the things he did is not something for this court now to reconsider. And, in fact, part of the reason that the Rule 59 motion was denied was because, as Judge Wall said, the jury had had an opportunity to see the witnesses and he was confident that they'd come to the right conclusions. So I would say that if you have no further questions about these procedural issues, summary judgment, the choice of law issue that you had asked for supplemental briefing on, or the relationship between 50A and 50B, although I do feel it is perhaps necessary, your honors, to address your attention to a case from April of 2008, Cheney v. Street, which is 523 F3rd 200. Wait a minute, give me that again. 523 F3rd 200. What's the name of the case? Cheney v. Street. And I feel it's my obligation and a duty of candor to the court and Mr. Perlman to tell you that at Head Note 18, the Third Circuit cites back to Williams v. Runyon, which is the case that we've been discussing. Now, here in Cheney v. Street, the court remanded the case for original fact-finding as to this waiver of waiver question. So I don't think it actually binds this panel in any way, shape, or form. It just raises the issues again. But given that it's cited to Williams v. Street, and that it was published in April of 2008, and so it wasn't in our original brief, I feel that it would be, it's appropriate to inform your honors of it now. Thank you. Thank you, Mr. Anderson. Thank you. Mr. Bartle. Thank you. Before I address the questions that Judge Ambrose asked me to address a moment ago, I'd like to pick up on something that counsel said during his remarks. And it dealt with questions that Judge Barry had given him with respect to the issue of whether he had agreed to, whether Mr. Kim had agreed to reduce his commissions. And counsel said, and I think correctly so, if he agreed to reduce those commissions, it was because his choice was either that or to be cut out of the equation. And I think that's true. And that in and of itself is absolute proof that this was a contract terminable at will. And if it was, otherwise his option would have been to sue for 15 years' commissions. If it was a contract terminable at will, then there was no breach of the contract in terminating it, and a breach of the covenant of good faith. The problem you run into, New Jersey law allows detrimental reliance to be placed before juries. And his argument to the jury was he detrimentally relied on various assurances that he believed he was given. The jury chose to believe him in this set of facts. The jury set damages. You don't get a jury verdict against you for violation of good faith and fair dealing unless it's pretty bad. You can violate a contract and not do something that's really bad. It just can be a violation of the contract. You don't have to get into the mental culpability. But to get good faith and fair dealing conviction or a verdict against you, that jury has to be convinced that you really went over the top in terms of how you acted. On a correct charge and in a correct analysis of the law, you're absolutely right. Okay. Before we get to damages, just digress for a second. What was wrong with the charge? Because, first of all, the charge never told the jury that there was no – that they could not make a finding of a violation of the covenant of good faith and fair dealing based upon the termination of the contract. They have to be two separate things themselves. Also, there was no – Did you submit a request for charge or did counsel submit a request for charge in the terms that you are now suggesting to us? No, I don't believe so, Your Honor. And, again, I concede we're dealing with plain error, but I believe that this was plain error. All right. The conduct – We know that.  Why don't you move to Judge Ambrose's side? Okay. I will deal with Judge Ambrose's questions, and I'd like to start – You have 17 seconds, so we don't need too many preliminaries, all right? Okay. Okay. I believe that the damages were clearly excessive. The conduct here does not approach the conduct in Bakelum or Sons of Thunder or Brunswick or any of the cases that are really the paradigm cases. Thirty-six months of damages without present value yet. And, by the way, these are not 36 months of profits. These are 36 months of gross commissions without any present value, without any deduction for any expenses of any sort whatsoever is grossly excessive. And I already told you where I think it goes back to. I know I'm out of time, but I do want to respond to the question that Judge Ambrose asked, if you'll permit me to, about Greenleaf, because they do have Greenleaf here before me. And Greenleaf draws the distinction that I suggested to Judge Ambrose before. It talks about the need – and there was no waiver issue in Greenleaf, so it talked about the need to move under 50A before you could move under 50B. And then it says – You move under 50A before you go to 59. You have to move under 50A in order to have a sufficiency of the evidence argument under Rule 59. If it's a contradictory – if the evidence contradicts the evidence, then Greenleaf says that you can – you need not bring it under 50 before you can bring it under 59. Yes, it says that to argue that a motion against a clear way to the evidence is not barred by 50, by failure to make a motion under 50, and I think that's clear. And we made that motion. And what I said to you is I think that you were – there's a good argument that you are disguising an insufficiency of the evidence argument as against the way to the evidence argument. I think it was both, but I don't think one precludes the other. And I don't think a fair reading of the law is that one precludes the other either. The insufficiency against the way to the evidence is a lesser standard than – against the way to the evidence is a lesser standard than insufficiency of the evidence. So certainly that argument is not necessarily subsumed in the 50B argument. We have heard your argument. We will take the case under advisement. Thank you, Your Honor. Thank you, Your Honor.